UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

STEPHANIE MONTOYA,
a.k.a. STEPHANIE GERUS

      Plaintiff,

v.

THE SCHOOL DISTRICT OF
PALM BEACH COUNTY, FLORIDA

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, STEPHANIE MONTOYA a.k.a. STEPHANIE GERUS, by and through her undersigned counsel, sues the Defendant, THE SCHOOL DISTRICT OF PALM BEACH COUNTY, FLORIDA and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages and to remedy violations of the rights of MS. MONTOYA a.k.a. MS. GERUS under the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008 ("ADA"), the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), and FMLA interference and retaliation in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq to redress injuries done to her by the Defendant, THE SCHOOL DISTRICT OF PALM BEACH COUNTY, FLORIDA ("Defendant").

2.     The unlawful acts which gave rise to this Complaint occurred within Palm Beach County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

1

## PARTIES

3.     At all times material hereto, Plaintiff has been a citizen and resident of Palm Beach County, Florida and is otherwise *sui juris*.

4.     At the relevant time, Plaintiff was a disabled woman, and, as such, Plaintiff is a member of a protected class under the ADA and Chapter 760 because the terms, conditions, and privileges of her employment were altered because of her disability.

5.     At all times material hereto, Plaintiff was an individual, who had rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, and, as such, Plaintiff is a member of a protected class, because the terms, conditions, and privileges of her employment were altered because of her request for FMLA leave.

6.     Defendant is a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

7.     Defendant has, at all times material hereto, employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the ADA and FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

8.     At all times material hereto, Defendant was a covered employer within the meaning and contemplation of the FMLA, 29 U.S.C. §2611(4)(A), in that they employed more than 50 employees within a 75-mile radius in each calendar year.

9.     Plaintiff was qualified for FMLA leave in that she had worked more than 1250 hours for Defendant in a twelve (12) month period immediately preceding her application for FMLA leave.

2

10.     Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

11.     Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

12.     Plaintiff was issued a Notice of Right to Sue on February 2, 2021. This suit is filed in accordance with that Notice and within the applicable ninety (90) day limitation (a copy of the Notice is attached hereto as Exhibit "A").

13.     The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14.     Defendant hired Plaintiff as a teacher at Loggers Run Middle School in November 2010.

15.     As a teacher, Plaintiff's primary duties and responsibilities included teaching forensic science and mentoring/tutoring students.

16.     Plaintiff was qualified for her position as a teacher based on her experience and training.

17.     Plaintiff excelled at her job and always received excellent yearly reviews, with the last being in May 2019 where Plaintiff received a great review together with a raise. Further, in Plaintiff's 9.5 years of employment with the Defendant, Plaintiff had never received any complaints or been involved in any incidents.

18.     In May 2019, there was code red lockdown/drill at the school. After the all clear was given, the kids on campus were not dismissed. Hoping to help the students calm their nerves,

the Plaintiff put on a science video. The Plaintiff was shaken from the incident, especially because she has PTSD and an anxiety disorder combined with ADHD.  While the students were watching the video, the Plaintiff sat at her desk and put her head down on her arms so that she could hide her tears from the students and maintain her composure.  Edmund Capitano, the Principal, came into the Plaintiff's classroom along with Officer Tucker, a female Palm Beach County School police officer, stating that he was visiting every classroom. When they entered the room, the Plaintiff raised her head to speak directly to Mr. Capitano.  Before the Plaintiff could open her mouth, Mr. Capitano asked her what was going on and whether or not she had taken anything; implying that the Plaintiff had taken drugs. Naturally, the Plaintiff was shocked and horrified at this comment as the Defendant had no basis to ask that question and was fully aware that just moments prior, the school was in a lockdown/drill.  In disbelief at the Defendant's inappropriate comment, Plaintiff responded that she was very emotional due to the lockdown/drill. He replied by asking her why her eyes were so red. With all the students staring at this point, the Plaintiff told him she had been crying. The police officer then took the Plaintiff's belongings, placed her hands behind her back, and escorted her out of her classroom to Mr. Capitano's office. Simultaneously, Mr. Capitano kept a tight grip on the Plaintiff's shoulder, causing bruising from her bleeding disorder.

Once in Mr. Capitano's office, the parties were joined by Ms. Sherry Graham, Assistant Principal, and another woman, Assistant Principal. All four of them accused the Plaintiff of behaving "neurotically" and "being on drugs." Over the next three hours, they required the Plaintiff to remain in the office.  Initially they demanded that the Plaintiff undergo a blood test for suspicion of drugs.  The Plaintiff explained that her bleeding disorder precluded that and could result in her death if done improperly, so the Plaintiff requested a urine test instead.  They agreed to allow the

Plaintiff to take a urine test but insisted that the Plaintiff urinate with the door open while a male watched.  As it so happened, the Plaintiff had her period at the time, making the situation even more violative.  After the Plaintiff took the urine test, the Defendant allowed her to leave to put her personal items in the car. Officer Tucker escorted the Plaintiff out and said, "I know why you don't wanna take a blood test. I'm not stupid." The Plaintiff responded, "I have a terrible bleeding disorder and I am an emotional wreck right now as well, so I don't care what you think." Then, the Plaintiff went back inside and waited to be dismissed. The Plaintiff volunteered to submit to a blood test the very next day in her hematologist's office.

19.     Shortly after the incident described above, the drug test results came back negative. Despite the fact that the Plaintiff passed the urine test, Mr. Capitano called her and said that she could not come back to work because she refused the blood test. The Plaintiff again explained to him about her disability, but to no avail.

20.     . Due to the Defendant's discriminatory behavior, the Plaintiff was upset and in turn asked Ms. Graham if she could use her sick days since there were only a few days left of the school year. She approved the Plaintiff's leave.

21.     In late July 2019, Plaintiff began to have seizures and had to be hospitalized. The Plaintiff was told by her neurologist, Dr. Swerdloff of Boca Raton Marcus Neurology Institute, that she would be unable to drive for at least six months and that she would not be able to be the only adult supervising her students. The Plaintiff contacted Defendant via Wendy Quincey to request a leave of absence. Ms. Quincey provided the Plaintiff all of the documents needed. All documents were filled out and approved by Dr. William Weil and faxed twice.

22.     Unfortunately, in early August 2019, the Plaintiff had another seizure. She was supposed to return to work on August 5, 2019 but due to her disability she could not. The Plaintiff

notified Mr. Capitano, Ms. Graham, and Richard, Director of Operations, of her doctor's orders. The Plaintiff requested a no pay/leave of absence due to her disability since she could not afford to pay for Uber every day to and from work and because she could not be the only adult supervising children.

23.     Wendy, the Principal's secretary, asked the Plaintiff to fill out FMLA paperwork. Three doctors completed the requested FMLA paperwork and the Plaintiff returned it to the Defendant in a timely manner.

24.     On August 29, 2019, the Plaintiff received a letter from Vicki Evans-Pare, Director, stating she had been absent from August 15, 2019 through August 19, 2019. The Defendant was well aware that the Plaintiff could not drive due to her disability and should not be alone supervising children, and that they had provided her FMLA paperwork. The Plaintiff immediately called Ms. Evans-Pare and left her a voicemail. Plaintiff then called Geri Lynn McCall, Director of CTA Palm Beach Schools, and she told the Plaintiff that the Defendant did not believe that she had a disability.

25.     The Defendant did not believe that the Plaintiff had a disability despite the fact that the Plaintiff provided medical leave documentation on more than one occasion.  Given the Plaintiff's seizures, it would be against medical advice for her to return to work to be the only adult supervising children.  Had the Plaintiff returned to the classroom, there was a real possibility that she would suffer a seizure in front of her class, leaving the children traumatized and leaving her without the necessary medical attention she may need. In total, Plaintiff applied for FMLA leave on three occasions due to her medical condition and was denied each time.

26.     On September 19, 2019, the Plaintiff received a letter from Mark Mitchell, Director, stating that her resignation had been accepted. However, the Plaintiff never resigned. Plaintiff

would have happily come back to work once she was given the all clear from her doctor. Around October 2019, the Defendant sent the Plaintiff another letter, this time stating she was terminated for "abandoning her job."

27.     Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")
### (Discrimination on the Basis of Disability)

28.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 27, inclusive, as though same were fully re-written here.

29.     The ADA forbids discrimination based on disability; prohibiting discrimination in employment, public services, public accommodations, and telecommunications.

30.     Plaintiff has a disability as that term is defined under the ADA, and, therefore, is a member of the protected class.

31.     At all relevant and material times, Defendant failed to comply with the ADA, which states in relevant part: (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

32.     At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

33.     At the time of the unlawful termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

34.     Plaintiff was qualified for the position.

35.     Defendant is a large institution, and therefore a sophisticated employer who has actual knowledge of the requirements of the ADA, as amended.

36.     The failure of Defendant to adhere to the mandates of the ADA was willful and its violations of the provisions of the ADA were willful.

37.     The Defendant's failure to communicate with the Plaintiff, denying her request for a reasonable accommodation, and failing to engage in the interactive process, alleging that she resigned when she did not and then later terminating her, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

38.     Because the Plaintiff had a disability, Defendant, through its employees terminated the Plaintiff.

39.      Any allegedly nondiscriminatory reason for the Defendant's failure to reasonably accommodate Plaintiff and ultimately terminate her employment is a mere pretext for the actual reasons for the failure to reasonably accommodate and for Defendant's termination of Plaintiff; inter alia Plaintiff's disability.

40.     Upon information and belief, the Defendant allows non-disabled employees to use their benefits, including leave, without terminating them.

41.     As a result of Defendant's violation, Plaintiff has suffered damages.

42.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, loss of fringe benefits, loss of retirement benefits, compensatory damages under the ADA for emotional distress, liquidated damages, prejudgment and post-judgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Disability)

43.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 27, inclusive, as though same were fully re-written here, and says:

44.     The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

45.     Plaintiff has a disability as that term is defined in the FCRA, and therefore, is a member of a protected class.

46.     At all relevant and material times, Defendant failed to comply with the FCRA.

47.     At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

48.     At the time of the unlawful discrimination and termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

49.     The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

50.     Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff by terminating her on account of her disability in violation of the FCRA.

51.     The Defendant's failure to communicate with the Plaintiff, denying her request for a reasonable accommodation, and failing to engage in the interactive process, alleging that she resigned when she did not and then later terminating her, demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

52.     Because the Plaintiff had a disability, Defendant, through its employees, terminated the Plaintiff.

53.     Any allegedly nondiscriminatory reason for the Defendant's failure to reasonably accommodate Plaintiff and ultimately terminate her employment is a mere pretext for the actual reasons for the failure to reasonably accommodate Plaintiff; inter alia Plaintiff's disability.

54.     Upon information and belief, the Defendant allows non-disabled employees to take time off as per their doctor's orders without terminating them.

55.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from termination due to her disability. Termination on the basis of disability constitutes unlawful discrimination.

56.     As a result of Defendant's violation of the FCRA, Plaintiff has suffered damages.

57.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for emotional distress, liquidated damages, prejudgment and post-judgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT III: FMLA INTERFERENCE

58.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 27 as if fully set forth herein.

59.     Plaintiff had the right to request FMLA leave on multiple occasions with the first time being around June/July 2019.

60.     The Plaintiff qualified for FMLA leave, but Defendant never approved Plaintiff for FMLA leave. In other words, Defendant interfered with Plaintiff's right to take FMLA leave by never actually allowing her to take the time off for which she should have been approved under FMLA.

61.     When Defendant did not allow the Plaintiff to use FMLA leave, it interfered with Plaintiff's right to the requested leave, or its equivalent, and thus violated the FMLA.

62.     Throughout the Plaintiff's employment, the Defendant did not allow her to use even one day of FMLA leave.

63.     As a direct result of the Defendant's denial of Plaintiff's right to use FMLA leave, she has suffered, and will continue to suffer, a loss of wages, employment benefits, and other compensation denied or lost to her by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to her loss of wages, employment benefits, and other compensation.

64.     Plaintiff is entitled to an award of her reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff hereby requests judgment in her favor and against Defendant's for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii); (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. § 2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees pursuant to 29 U.S.C. § 2617(a)(3); and (e) such other and further relief as this Court deems just and proper.

## COUNT IV: FMLA RETALIATION

65.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 27 as if fully set forth herein

66.     Plaintiff had the right to request FMLA leave on multiple occasions with the first time being around June/July 2019.

67.     The Plaintiff qualified for FMLA leave.

68.     On every occasion, the Defendant denied Plaintiff's right to take the requested leave and ultimately Defendant terminated Plaintiff in retaliation.

69.     Plaintiff's termination constituted an adverse employment action.

70.     Plaintiff's action in requesting her FMLA leave was "protected activity" under the FMLA.

71.     Plaintiff's request for FMLA leave was, at a minimum, a motivating factor in Defendant's decision to terminate Plaintiff's employment.

72.     Defendant's purported reason(s), if any, for terminating Plaintiff's employment are pretextual.

73.     As a direct result of her termination, Plaintiff has suffered, and will continue to suffer a loss of wages, employment benefits, and other compensation denied or lost to her by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to her loss of wages salary, employment benefits, and other compensation.

74.     Plaintiff is entitled to an award of her reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff, hereby requests judgment in her favor and against Defendant's for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii); (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. §

2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees, pursuant to 29 U.S.C.

§ 2617(a)(3); € and such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 3rd day of May, 2021

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff

14